MHN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA ZABORS, ) | |
| ) | |
| Plaintiff, ) | No. 09 C 900 |
| v. ) | |
| ) | Judge Ruben Castillo |
| CHATSWORTH DATA CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Linda Zabors ("Plaintiff") brings this employment action against Chatsworth Data Corporation ("Defendant"). (R. 37, Second Am. Compl.) Plaintiff claims that Defendant discriminated (Count VII) and retaliated (Count VIII) against her in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (*Id.* ¶¶ 131-167.) In addition, Plaintiff brings several claims under Illinois and California state law. (*Id.* ¶¶ 73-130.) Plaintiff alleges that Defendant violated the Illinois Workers' Compensation Act ("ILWCA"), 820 Ill. Comp. Stat. 305/1 *et seq.* (Count I), or in the alternative, the California Labor Code, Cal. Labor Code § 132a ("Section 132a") (Count V), by retaliating against her for requesting workers' compensation benefits. (*Id.* ¶¶ 73-85, 108-121.) Plaintiff also alleges that Defendant failed to pay her earned commission in violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115/1 *et seq.* (Count II), or in the alternative, the California Labor Code, Cal. Labor Code § 201 ("Section 201") (Count VI). (*Id.* ¶¶ 86-102, 122-130.) Finally, Plaintiff alleges violations of the Illinois Sales Representative Act ("ISRA"), 820 Ill. Comp. Stat. 120/1 *et seq.*

(Count III) and the Illinois Earned Commissions Administrative Code ("IECAC"), 20 Ill. Admin. Code § 300.510 (Count IV). (*Id.* ¶¶ 98-107.) Currently before the Court is Defendant's Motion to Dismiss Counts V and VI of Plaintiff's complaint. (R. 40, Def.'s Mot. to Dismiss.) For the reasons stated below, the motion is granted in part and denied in part.

## RELEVANT FACTS

Defendant is a California corporation that designs, manufactures and sells optical imaging technology. (R. 37, Second Am. Compl. ¶ 3.) Plaintiff, a citizen of Illinois, was hired by Defendant in February 2007 as Vice President of its Impactograph division. (*Id.* ¶¶ 2, 7.) Plaintiff was responsible for "revenue generation, business development, marketing, operations, policy management, and [] development" for Defendant's Impactograph product. (*Id.*) She performed most of her duties from a home office in Chicago, but traveled to Defendant's office in California about one week per month. (*Id.* ¶¶ 10-11.)

In December 2007, Defendant underwent a series of corporate management changes and Plaintiff was reassigned to a newly formed Sales group. (*Id.* ¶¶ 13-14.) In her new role, Plaintiff was responsible for selling all of Defendant's products and was given the title Vice President of World Wide Sales and Business Development. (*Id.* ¶¶ 14, 21.) In addition, Plaintiff was informed that she would no longer receive commission payments under Defendant's then existing commission policy and that a new policy was forthcoming, which would be retroactive for all commissions as of December 1, 2007. (*Id.* ¶¶ 15, 16, 18.) Plaintiff alleges that Defendant

failed to provide her with a new commission policy even though she "qualified for a large commission increase" for December 2007 and January 2008. (*Id.* ¶¶ 17, 19.)

In her new role in the Sales group, Plaintiff alleges that she "continued to increase Defendant's market presence and sales of its products through her personal and customer contacts." (*Id.* ¶ 23.) However, in February 2008, Plaintiff claims that "Defendant forced [her] to discontinue her business development efforts and instead instructed [her] to create a database of potential customers' contact information for a mass e-mail marketing effort by extracting information from company's individual websites on the Internet." (*Id.* ¶ 29.) Plaintiff claims that as a result of this "repetitive typing" she developed "severe pains" in both her hands. (*Id.* ¶¶ 30-31.)

On February 29, 2008, Plaintiff was diagnosed with carpal tunnel syndrome and was instructed by her physician "to wear wrist splints on both hands 24 hours per day." (*Id.* ¶ 35.) Plaintiff claims that her pain "prevented her from performing her employment activities, and also limited her daily life activities." (*Id.* ¶ 36.) On March 5, 2008, after consulting with a specialist, Plaintiff was provided a Disability Certificate. (*Id.* ¶ 41.) The certificate described the restrictions that had been prescribed by Plaintiff's physician including "rest, restricted work duties, and an ergonomically correct environment." (*Id.*) As a result of her restrictions, Plaintiff claims that Defendant suggested some alternative duties to keep her off of the computer, including performing work in the California home office or traveling to customers to perform

demonstrations. (*Id.* ¶¶ 42-43.) Plaintiff alleges that she was willing to perform these alternate duties, but Defendant never allowed it. (*Id.* ¶ 44.)

On March 13, 2008, Plaintiff alleges that she met with Defendant to discuss the possibility of obtaining workers' compensation benefits and requested two days off "to rest her hands." (*Id.* ¶¶ 45-46.) She claims that Defendant "instructed her to instead take two weeks of her vacation time" and said that she could not perform alternate duties because she "needed to rest her hands." (*Id.* ¶¶ 47, 49.) Plaintiff claims that during her leave she requested to be included in sales meetings and training but was excluded from these activities. (*Id.* ¶¶ 50-51.) Further, she claims that on March 20, 2008, when she attempted to check her e-mail, her log-in credentials were denied. (*Id.* ¶ 53.) On March 24, 2008, Plaintiff claims that she contacted Defendant and again requested alternate duties. (*Id.* ¶¶ 55, 57.) She claims that her request was again denied and Defendant responded with "harsh[]" criticism, telling Plaintiff that "her job performance was sub par and lacking."[1] (*Id.* ¶¶ 56, 58, 61-62.) In addition, Plaintiff claims that Defendant told her that her duties would be reassigned and "directed [her] to use two more weeks of vacation time." (*Id.* ¶¶ 64, 67.)

On March 28, 2008, Plaintiff alleges that she received a letter from Defendant informing her that her employment was terminated effective immediately because she failed to meet her performance objectives and obligations as a Sales team member. (*Id.* ¶¶ 68-69.) Plaintiff avers

---

[1] Plaintiff claims that this was the first time she received a negative performance assessment from Defendant. (*Id.* ¶ 63.)

that although none of her colleagues in the Sales group met their sales performance objectives, she was the only person terminated on this basis. (*Id.* ¶¶ 70-71.)

## PROCEDURAL HISTORY

On February 12, 2009, Defendant removed Plaintiff's case from the Circuit Court of Cook County to the Northern District of Illinois. (R. 1, Notice of Removal.) The case was before the Honorable Joan H. Lefkow, who on April 3, 2009, issued an order of recusal. (R. 15, Min. Entry.) On April 7, 2009, the case was reassigned to this Court. (R. 16, Order.) Plaintiff filed an amended complaint on May 5, 2009.[2] (R. 21, Am. Compl.) On April 8, 2010, Plaintiff amended her complaint for a second time. (R. 37, Second Am. Compl.)

On April 21, 2010, Defendant moved to dismiss Counts V and VI of Plaintiff's complaint. (R. 40, Def.'s Mot.) Defendant asserts that a conflict of law analysis is required to dismiss and narrow Plaintiff's claims to those arising from Illinois, rather than California law. (*Id.* at 3.) In addition, Defendant argues that Plaintiff's California-based workers' compensation retaliation claim (Count V) cannot be brought in this Court because the California Workers Compensation Appeals Board ("CWCAB") retains exclusive jurisdiction over any such claims. (*Id.*)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v.*

---

[2] On May 18, 2009, the case was dismissed pursuant to an automatic bankruptcy stay. (R. 23, Min. Entry.) The case was reinstated on December 18, 2009, once the stay was lifted. (R. 27, Min. Entry.)

5

*FOP Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court construes the complaint "in the light most favorable to the nonmoving party, accept[ing] well-pleaded facts as true, and draw[ing] all inferences in her favor." *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). To survive a motion to dismiss, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

## ANALYSIS

### I. Duplicate Claims

Defendant first argues that Counts V and VI of Plaintiff's complaint are "redundant and cumulative." (R. 41, Def.'s Mem. at 12.) Defendant asserts that Plaintiff's claims are "properly brought under Illinois law only;" therefore, "[t]he duplicative California claims should be dismissed."[3] (*Id.* at 5-6.) Even though federal pleading standards apply when the Court sits in diversity, *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010), Defendant cites an Illinois Supreme Court decision in support of its argument. (*See* R. 49, Def.'s Reply at 2.) In *Neade*, the Illinois Supreme Court found that the while "attempting to couch the claim in different terms,"

---

[3] Defendant does not argue that Plaintiff has failed to set forth sufficient facts to state a claim under either California or Illinois law. (*See* R. 40, Def.'s Mot. to Dismiss.)

6

the plaintiff was "essentially pleading the same cause of action which caused the same damages." *Neade v. Portes*, 739 N.E.2d 496, 503 (Ill. 2000). The court did not allow the duplicate claim to go forward, reiterating "[w]hile pleading in the alternative is generally permitted, duplicate claims are not permitted in the same complaint." *Id.* In this case, Plaintiff is not attempting to "couch" her claims in different terms, but has explicitly pled the California claims, Counts V and VI, in the alterative to her Illinois claims. (*See* R. 37, Second Am. Compl.)

Federal Rule 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). In this case, both Illinois and California have some connection to this claim. Plaintiff is a citizen of Illinois, while Defendant is a California based corporation. (R. 37, Second Am. Compl. ¶¶ 2, 3.) Plaintiff performed most of her duties from a home office in Chicago, but traveled to Defendant's home office in California about one week per month. (*Id.* ¶¶ 10-11.) Accordingly, Plaintiff is free to plead violations of the applicable law of both states as alternative means of recovery. *See* Fed. R. Civ. P. 8(d)(2). Plaintiff will not be able to recover under both theories because ultimately a determination will be made as to the law that will govern these claims. However, at this stage of the litigation Plaintiff has pled sufficient allegations to justify relief under either California or Illinois law. *See* Fed. R. Civ. P. 8(d)(2) ("If

7

a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").[4] Therefore, Defendant's motion to dismiss on this basis is denied.

## II. Section 132a Claim

Next, Defendant argues that the CWCAB has "exclusive jurisdiction" over Plaintiff's California workers' compensation claim. (R. 41, Def.'s Mem. at 12-13.) Therefore, Defendant argues that Count V should be dismissed.[5] (*Id.*) Section 132a imposes liability on "any employer who discharges . . . or in any manner discriminates against any employee because he or she has filed . . . a claim for compensation with his or her employer . . . ." Cal. Labor Code § 132a(1). Proceedings under Section 132a "are to be instituted by filing an appropriate petition with the appeals board" as the board "is vested with full power, authority, and jurisdiction to try and determine finally all matters specified in this section subject only to judicial review . . . ." *Id.* As such, the CWCAB is the exclusive forum for Plaintiff's alleged Section 132a workers' compensation claim. *See id.*; *Vermillion v. Corrs. Corp. of Am.*, No. CV F 08-1069, 2008 U.S.

---

[4] Defendant asserts that the Court should determine the applicable law at this time. (R. 41, Def.'s Mem. at 5-12.) However, a choice of law analysis is not required to resolve the motion before the Court. *See Kmart Corp. v. Footstar, Inc.*, 2010 U.S. Dist. LEXIS 38817, *10-12 (N.D. Ill. Apr. 14, 2010) (where the plaintiff alleged sufficient facts to set forth a violation under the laws of both states that may apply to the case, "the conflict of laws issue is reserved for later determination"). Nevertheless, the Court notes that "[w]hen neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits." *RLI Ins. Co. v. Conseco, Inc.*, 543 F.3d 384, 390 (7th Cir. 2008). Accordingly, if there is no conflict of law issue in this case, the Court will apply Illinois law.

[5] While Defendant styles this as a Rule 12(b)(6) failure to state a claim argument, it should properly be brought under Rule 12(b)(1) based on lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b).

Dist. LEXIS 75889, * (E.D. Cal. Aug. 28, 2008) ("A claim under section 132a lies within the WCAB's exclusive jurisdiction."). Accordingly, Defendant's motion to dismiss on this basis is granted. Plaintiff's Section 132a claim, Count V, is dismissed.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss (R. 40) is GRANTED in part and DENIED in part. Count VI of Plaintiff's complaint remains, but Count V is dismissed. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status on September 28, 2010 at 9:45 a.m. for the explicit purpose of setting a firm trial date.

Entered: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

**Dated: September 2, 2010**

9